**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | |
|---|---|
| **GINGER UPTON and SARAH BEACH** | **PLAINTIFFS** |
| **v.** | **Civil No. 2:24-cv-129-HSO-BWR** |
| **JAMIE MOULDS, et. al** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DELTA ELIZABETH HITT'S MOTION [150] FOR PARTIAL SUMMARY JUDGMENT**

This case arises from the alleged roadside vaginal body-cavity searches of Plaintiffs Ginger Upton and Sarah Beach performed by Defendant Delta Elizabeth Hitt during a traffic stop.  Defendant Hitt now moves for partial summary judgment on grounds of qualified immunity as to Counts Three, Four, Five, Six, Seven, and Eight of the Amended Complaint [10].  *See* Mot. [150].  She also seeks summary judgment on Counts One and Nine under the Mississippi Tort Claims Act, *see id.*, but concedes that Count Two—the Fourth Amendment claims relating to the searches—should proceed to trial, *see id.*  Defendant's Motion [150] should be granted in part and denied in part.

## I. BACKGROUND

On January 30, 2024, Plaintiffs Ginger Upton ("Upton") and Sarah Beach ("Beach"), along with two male passengers, were traveling in their vehicle in Columbia, Mississippi, when they were pulled over by Defendant Jamie Moulds ("Officer Moulds") of the Columbia Police Department ("CPD").  During the traffic

stop, Officer Moulds smelled marijuana emanating from Plaintiffs' vehicle, *see* Ex. "E" [150] (Moulds's Body Camera), at 3:10-3:11, and when asked, a male passenger confirmed that "somebody probably smoked in here yesterday," *see* Ex. "E" [150] (Riels's Body Camera), at 3:23-3:25.  Subsequently, Officer Moulds and CPD Officer Austin Riels ("Riels") searched the car and discovered a "roach," the unburnt remnants of a marijuana cigarette, and a Xanax pill.  *See* Hitt Dep. Tr. [150-2] at 66-67; Ex. "E" [150] (Moulds's Body Camera), at 9:22-24, 9:32, 13:15.  Officer Moulds radioed other officers and asked whether there were any female officers on duty who were available to search Plaintiffs.  *See* Ex. "E" [150] (Riels's Body Camera), at 18:25-18:30.  Officer Michael Turner ("Officer Turner"), who was not on scene, responded and drove Defendant Delta Elizabeth Hitt ("Defendant" or "Hitt"),[1] a desk sergeant and the only available female officer, to the location of the traffic stop.  *See* Hitt Dep. Tr. [150-2] at 38-41.  Once she arrived, Hitt asserts that she donned latex gloves and "perform[ed] a palm-down search of the undergarment[.]" *Id.* at 42.  Hitt maintains she "only searched [Plaintiffs'] garments," *id.* at 87, including inside both Plaintiffs' pants, *id.* at 94, 95, but never touched either Plaintiff's skin, *see id.* at 87.

Plaintiffs allege that Hitt's searches were far more invasive.  Specifically, Plaintiff Upton testified that:

> [Hitt] pulled my leggings this far (indicating) out from in front of me. After she had done [sic] placed her fingers up inside my vagina, all the way inside full fingers, round and round -- . . . Full fingers.  That wasn't

---

[1] The Amended Complaint [10] names Delta Elizabeth Ward as a Defendant, but according to her counsel, her legal name is Delta Elizabeth Hitt.  *See* Mem. [151] at 1.  The Court will use her legal name.

> no tips [sic], full fingers, round and round, back and forth, trying to check all the walls of it.

Upton Dep. Tr. [150-3] at 7.  And, according to Plaintiff Beach, Defendant Hitt

> went into the lips of my vagina, and she took her two fingers and went up and down from the very top of my clit to the bottom where my hole is.  She didn't go inside but she went on top of it maybe like three or four times; and then she came back out and felt like the creases of the outside and then went back in with the two fingers and did the same thing.

Beach Dep. Tr.  [150-4] at 9.

After Hitt concluded her search and found nothing on Plaintiffs' persons, Plaintiff Upton was cited for possession of marijuana and for illegal window tint, and she and her passengers were allowed to depart.  *See* Ex. "E" [150] (Moulds's Body Camera), at 40:44-40:54.  It was at that point that Hitt stated to the other officers that "while she was patting down/searching Ginger[,] [] she went all up inside Ginger to make sure she wasn't hiding anything inside of her."  Dkt. [175-2] (Poirier Memorandum).  Hitt maintains this was a "sarcastic" comment.  Hitt Dep. Tr. [150-2] at 57.

Plaintiffs filed suit in this Court on August 22, 2024.  *See* Compl. [1].  The Amended Complaint [10] names as Defendants Officer Moulds, Officer Chris Bush, Officer Riels, Officer Lance Poirer, Officer Turner, Officer Hitt, CPD Chief of Police Michael Kelly, and the City of Columbia, Mississippi.  *See* Am. Compl. [10] at 1-3. The nine-count pleading advances claims for (1) violations of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, et seq. ("MTCA") (Count One); (2) unconstitutional use of excessive force and illegal search and seizure pursuant to 42

U.S.C. § 1983 (Count Two);[2] (3) violations under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), against Defendants Chief of Police Michael Kelly and the City of Columbia, Mississippi (Count Three); (4) deprivation of Plaintiffs' First Amendment free speech rights (Count Four); (5) retaliation under 42 U.S.C. § 1983 (Count Five); (6) violation of Plaintiffs' equal protection rights under the Fourteenth Amendment (Count Six); (7) failure to adequately train or supervise against Defendants Chief of Police Michael Kelly and City of Columbia, Mississippi (Count Seven); (8) bystander liability claims against the CPD Officers on-scene (Count Eight); and (9) intentional/negligent infliction of emotional distress under state law (Count Nine). *Id.* at 12-20.

Defendant Hitt concedes that, as to Count Two, "[t]here is material conflicting evidence whether [she] conducted a vaginal body cavity search of Upton and Beach at the roadside traffic stop," but argues that the Amended Complaint [10] "contains counts against [her] which are either non-specific to her or irrelevant to her role in the traffic stop and search," and should be dismissed. Mem. [151] at 2. Plaintiffs agree that "Hitt is entitled to a partial summary judgment on Counts Three, Four, Five, Seven, and Eight as those claims do not pertain to her." Plaintiffs did not respond to Hitt's Motion [150] with respect to Count Six, *see generally id.*, but they dispute whether summary judgment is appropriate on

---

[2] Although a body-cavity search claim sounds more in the nature of an illegal search, the Fifth Circuit has held that a roadside body-cavity search can sustain a claim for excessive force. *See Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017) ("[E]xcessive force applies because [the plaintiffs] have alleged that they were subjected to a use of force—the insertion of [the defendant's] fingers into their vaginas and anuses—during the course of the investigatory stop.").

Counts One and Nine, Resp. [176] at 2.  Accordingly, the Court will grant summary judgment as to the confessed Counts Three, Four, Five, Seven, and Eight, and the Court need only address whether Hitt is entitled to partial summary judgment as to Counts One, Six, and Nine.

## II.  DISCUSSION

### A.    Legal Standard

Federal Rule of Civil Procedure 56 requires summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (quotation marks and citation omitted).  "The nonmovant must then come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  But "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008) (per curiam).

### B.    Analysis

1.    Plaintiffs' State-Law Claims Under the MTCA (Count One)

Count One raises claims under state law for "reckless disregard," in violation of the MTCA.  *See* Am. Compl. [10] at 12.  Hitt seeks summary judgment on Plaintiffs' MTCA claims on grounds that "[a]n employee acting within the course and scope of their employment . . . may not be held 'personally liable.'"  Mem. [151]

5

at 8 (quoting Miss. Code Ann. § 11-46-7(2)).  Plaintiffs respond that although they "alleged that Hitt was acting within" the scope of her employment when performing the searches, "certain facts developed through discovery indicate that Hitt may not have been acting within the scope of her employment at all times during the searches as she may have performed searches that were unauthorized by the City of Columbia's Policy[.]" Resp. [176] at 7.  They assert that "the body camera footage reveals there were times when Hitt may have exhibited 'reckless disregard' for Plaintiffs [sic] safety while acting within the course and scope of her employment," but at other times, "Defendant Hitt may have acted outside the course and scope of her employment while performing the searches." *Id.* (emphasis omitted).

"The MTCA 'provides the exclusive civil remedy against a governmental entity or its employees for acts or omissions which give rise to a suit.'" *Walton v. City of Verona*, 82 F.4th 314, 321 (5th Cir. 2023) (quoting *Horton ex rel. Est. of Erves v. City of Vicksburg*, 268 So. 3d 504, 508 (Miss. 2018)).  Typically, the "MTCA cloaks the state and its political subdivisions with sovereign immunity," *id.* at 322, but the Mississippi Legislature has waived sovereign immunity for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment," Miss. Code Ann. § 11-46-5(1).  "If the employees in question acted within the course and scope of their employment, they may be joined as parties but not held personally liable," but "where employees act outside the course and scope of their employment, the MTCA does not waive the sovereign immunity of the State and its political

6

subdivisions," subjecting those employees to individual liability.  *Hawkins v. City of Lexington*, No. 3:19-cv-606-DPJ-FKB, 2021 WL 5236017, at \*6 (S.D. Miss. July 9, 2021) (first citing Miss. Code Ann. § 11-46-7(2) and then citing *Cockrell v. Pearl River Vallery Water Supply Dist.*, 865 So. 2d 357, 361 (Miss. 2004)).

Under the MTCA, there is a "rebuttable presumption that any act or omission of an employee within the time and at the place of [her] employment is within the course and scope of [her] employment."  Miss. Code Ann. § 11-46-7(7).  But

> an employee shall not be considered as acting within the course and scope of [her] employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice[.]

Miss. Code Ann. § 11-46-5(2).  And the Mississippi Supreme Court has explained that "[u]nder Section 11-46-5(2), torts in which malice is an essential element 'are not within the course and scope of employment,'" so the MTCA does not apply in those circumstances.  *Univ. of Mississippi Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (Miss. 2017) (quoting *Zumwalt v. jones Cnty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009)).  "Rather, 'any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual.'"  *Id.* (quoting *Zumwalt*, 19 So. 3d at 688).

Plaintiffs argue that "Defendant Hitt may have acted outside the course and scope of her employment while performing the searches," Resp. [176] at 7 (emphasis omitted), but in the same paragraph they say Hitt was at times "acting within the scope of her employment," *see id.*  The Court is skeptical of Defendant Hitt's ability

7

to amorphously move between these categories over such a brief period of time.

Hitt was the only female police officer on duty, and she responded to a request for a

female officer to search Plaintiffs.  *See* Hitt Dep. Tr. [150-2] at 40.  Although there is

a factual dispute regarding whether Hitt used excessive force or conducted an

illegal search or seizure under the Fourth Amendment, Plaintiffs have not offered

any evidence that could rebut the MTCA's presumption that she was performing

her job functions at the time of the search.  So, for Hitt to be individually liable, she

must have acted maliciously or recklessly during the search.   *See* Miss. Code Ann. §

11-46-5(2).

Turning to the merits, Plaintiffs appear to be advancing two state-law claims

against Hitt: (1) "reckless disregard" for Plaintiffs' safety and well-being when she

performed the alleged body-cavity searches; and (2) intentional and/or negligent

infliction of emotional distress.  *See* Am. Compl. [10] at 12, 20; Resp. [176] at 6, 8-9.

But "reckless disregard is not a substantive tort claim under Mississippi law,"

*Hawkins*, 2021 WL 5236017, at \*7; rather, it "is a standard that applies when

determining whether a municipality has retained its immunity," *id.*  And

municipalities retain sovereign immunity for

> any act or omission of an employee of a governmental entity engaged in
> the performance or execution of duties or activities relating to police or
> fire protection unless the employee acted in reckless disregard of the
> safety and well-being of any person not engaged in criminal activity at
> the time of injury.

Miss. Code Ann. § 11-46-9(1)(c).  Put another way, Plaintiffs must show that Hitt

engaged in some tortious conduct *and* that she acted with reckless disregard for

Plaintiffs' safety when engaging in that conduct.  But here, Plaintiffs have not

articulated an underlying tort aside from their negligent and intentional infliction of emotional distress claims.  To the extent Plaintiffs assert independent claims for reckless disregard, they should be dismissed because reckless disregard is not a substantive tort.  *See Hawkins*, 2021 WL 5236017, at *7.

2.    Claims for Negligent and/or Intentional Infliction of Emotional Distress (Count Nine)

a.    Plaintiffs' Negligent Infliction of Emotional Distress ("NIED") Claims

Hitt argues that she cannot "be personally liable for the claim of negligent infliction of emotional distress, as immunity is waived only to the governmental entity," and the MTCA requires "reckless disregard."  Mem. [151] at 8 (citing Miss. Code Ann. § 11-46-9(1)(c)).  Plaintiffs do not respond to this argument, focusing instead on their intentional infliction of emotional distress ("IIED") claims.  *See* Resp. [176].

To be subjected to individual liability, Defendant Hitt must have acted outside of the scope of her employment; in other words, she must have acted with malice.  *See* Miss. Code Ann. § 11-46-5(2).  But Plaintiffs' NIED claims are negligence-based claims that do not require malice and they "'indisputably fall[] within the scope of the MTCA,' so [an] officer[] cannot be individually liable." *Hawkins*, 2021 WL 5236017, at *7 (quoting *Klingler v. Univ. of S. Miss.*, No. 2:12-cv-150-KS-MTP, 2013 WL 6328852, at *17 (S.D. Miss. Dec. 5, 2013), *aff'd sub nom. Klinger v. Univ. of S. Miss., USM*, 612 F. App'x 222 (5th Cir. 2015)); *see also Cooley v. Forrest Cnty. Sherrif's Dep't*, No. 2:20-cv-5-KS-MTP, 2020 WL 5118054, *3 (S.D.

9

Miss. Aug. 31, 2020).  Because Plaintiffs' NIED claims are barred by the MTCA, they should be dismissed.

b.     <u>Plaintiffs' Intentional Infliction of Emotional Distress Claims</u>

Intentional infliction of emotional distress "can be predicated on behavior that is malicious, intentional, wanton, grossly careless, indifferent, *or* reckless," so to the extent Plaintiffs premise their IIED claims on Hitt's allegedly reckless or malicious conduct during the searches, they fall outside the scope of the MTCA, and Hitt could potentially be individually liable, *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011) (emphasis in original); *see also Cooley*, 2020 WL 5118054, at \*3; *Hawkins*, 2021 WL 5236017, at \*7, a point she concedes, *see* Reply [181] at 2. Nor does Hitt contend that Plaintiffs cannot create a jury question on these claims, which require a plaintiff to prove:

> (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Herbert v. Herbert*, 374 So. 3d 562, 570-71 (Miss. Ct. App. 2023) (cleaned up).

Instead, Hitt argues that Plaintiffs' IIED claims should be dismissed because "[t]he claim of intentional infliction of emotional distress rests on the Fourth Amendment claim of an unconstitutional body cavity search," making it "redundant to the body cavity search claim."  Mem. [151] at 8 (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1012 (5th Cir. 2003)); *see also* Reply [181] at 3.  Plaintiffs counter that their Fourth Amendment claims "involve harm to Plaintiffs'

10

constitutional rights, while the claims alleged in Count Nine involve harm to Plaintiffs' mental and emotional state of mind." Resp. [176] at 9. According to Plaintiffs, their IIED claims are "separate and distinct from their Fourth Amendment claims regarding the deprivation of constitutional rights and excessive force" and they "address different aspects of Defendant Hitt's conduct and the consequences resulting therefrom." *Id.* at 10.

The parties agree that Plaintiffs' IIED claims are rooted in the same conduct that underlies their Fourth Amendment claims for excessive force or illegal search: the alleged body-cavity searches. *See id.* at 10; Mem. [151] at 8. And compensatory damages are available under 42 U.S.C. § 1983 for emotional suffering. *See Cronen v. Texas Dep't of Hum. Servs.*, 977 F.2d 934, 939 n.6 (5th Cir. 1992). Nonetheless, Plaintiffs' IIED claims are not subsumed by, or redundant of, their Fourth Amendment claims, and the case cited by Defendant is unpersuasive.

In *Williams*, the police executed a "hazardous" warrant at a night club, "detained approximately 100 people," and "conducted a pat-down search, strip search, and warrant checks on each individual there." 352 F.3d at 1000. Seventeen of the individuals searched brought suit under 42 U.S.C. § 1983, claiming that the defendants violated their Fourth Amendment rights by subjecting them to illegal strip searches. *See id.* All but three plaintiffs settled or were dismissed. *See id.* The remaining three plaintiffs "attempted to amend their complaint, in part to include an invasion-of-privacy claim," *id.* at 1000, but they were unsuccessful because the magistrate judge rejected their amendment on procedural grounds, *id.*

at 1012. Subsequently, the district court granted summary judgment on the invasion of privacy claim because the then-current pleading did not contain that claim. *See id.* at 1000.

On appeal, the plaintiffs did not argue that the magistrate judge erred; rather, they argued that "the Fourth Amendment claim pleaded in the original complaint include[d] the claim against invasion of privacy." *Id.* at 1012. In affirming the district court, the Fifth Circuit explained that "[t]o the extent that plaintiffs' claim of invasion of privacy rests on the Fourth Amendment, it fails because it is redundant to their illegal strip search claim," because even if the "plaintiffs could establish that [the] strip searches were not conducted in the privacy normally required . . . [that] transgression [was] inseparable from the illegal strip search violation itself." *Id.* And "[b]y finding the strip searches themselves unlawful, there [was] no need to address a particular aspect of [the] searches that [was] potentially unlawful as well." *Id.* In other words, only if the strip search itself was lawful would the court need to address whether a particular aspect of it, like the amount of privacy afforded to the plaintiffs during the search, was sufficient. Indeed, the Fifth Circuit mused that "[i]f, perhaps, defendants were within their constitutional authority to strip search plaintiffs to begin with, but impermissibly conducted the strip search in a public area, then plaintiffs may have had a privacy-oriented Fourth Amendment claim." *Id.*

But that is not the situation here. The standard for IIED in Mississippi, that a tortfeasor's conduct or actions "evoke outrage or revulsion in civilized society,"

12

*Herbert*, 374 So. 3d at 570-71, or be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Am. Zurich Ins. Co. v. Guilbeaux*, No. 1:16-cv-354-LG-RHW, 2018 WL 1661629, at *7 (S.D. Miss. Apr. 5, 2018) (citation omitted), is different from, and more exacting than, the reasonableness standard used to evaluate claims of excessive force or illegal searches, *see Romero v. City of Grapevine, Texas*, 888 F.3d 170, 176 (5th Cir. 2018) (requiring the use of force be "objectively unreasonable"). So, unlike in *Williams*, Plaintiffs have stated separate tort claims for IIED, and those claims are not completely encompassed by their Fourth Amendment claims.

Moreover, the Court has been unable to find—and Hitt has not cited—a single case in Mississippi barring a plaintiff from pursuing both a federal excessive force or illegal search claim and a state-law IIED claim. Although courts will dismiss a state-law IIED claim if it concludes that an officer acted reasonably, *see, e.g., Hawkins*, 2021 WL 5236017, at *8 (finding "no reasonable jury could find for [Plaintiff] on the IIED claim" for the "same reasons the excessive-force claim" failed); *Renfroe*, 374 So. 3d at 1243 (concluding that because the district court ruled "as a matter of law that [Defendant's] use of force was objectively reasonable and not excessive," the plaintiff's claim for IIED was barred by res judicata); *Franklin v. City of Indianola, Mississippi*, No. 4:23-cv-165-SA-JMV, 2024 WL 4293916, at *21 (N.D. Miss. Sept. 25, 2024), those holdings do not foreclose the opposite result. A jury could conclude that Hitt exercised an unreasonable amount of force or

13

conducted an illegal search, but also find that her conduct does not "evoke outrage or revulsion in civilized society." *Herbert*, 374 So. 3d at 570-71.  And to the extent that the Fourth Amendment and IIED claims are distinct but nonetheless carry the risk of overlapping awards because the alleged injuries are substantially similar, this issue may be addressed through jury instructions or remittitur.  *See Bender v. City of New York*, 78 F.3d 787, 791 (2d Cir. 1996) (applying remittitur); *see also Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 462 (5th Cir. 1995) (per curiam) ("Even though recovery is premised on two different theories, a plaintiff cannot recover the same damages twice.").

Finally, Defendant Hitt has not argued that summary judgment would otherwise be appropriate on Plaintiffs' IIED claims, and several factual disputes preclude summary judgment.  For instance, Defendant Hitt acknowledges that there is a disputed material issue regarding whether digital penetration occurred during the roadside searches.  *See* Mem. [151] at 2.  If Plaintiff Upton proves that, during the searches, Hitt "placed her fingers up inside [her] vagina," Upton Dep. Tr. [150-3] at 7, and Plaintiff Beach proves that, during the searches, Defendant "went into the lips of [her] vagina," a reasonable jury could conclude that this conduct would "evoke outrage or revulsion in civilized society," *Herbert*, 374 So. 3d at 570-71.  Plaintiffs' IIED claims are, in the Court's view, not redundant of their Fourth Amendment claims and should proceed to trial.

14

3.   Plaintiffs' Fourteenth Amendment Equal Protection Claims (Count Six)

The Amended Complaint [10] alleges that the body-cavity searches violated the Equal Protection Clause of the Fourteenth Amendment because only Upton and Beach, who are both females, were subjected to such searches, while the two male passengers were not. *See* Am. Compl. [10] at 16, 17. Defendant Hitt argues that summary judgment is appropriate because there is no evidence that she "had any involvement in any alleged decision to conduct a different search of the females," Mem. [151] at 6, and alternatively, that Plaintiffs abandoned their equal protection claims by not opposing Defendant's Motion [150] on this Count, *see* Reply [181] at 1.

"A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C., v. State Auto Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *see also Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Plaintiffs did not oppose or respond to Defendants' Motion [150] as to Count Six or pursue their claims beyond their initial pleadings. Nor have they produced evidence that Hitt—also a female—targeted Plaintiffs for different treatment because of their gender. On this record, Plaintiffs have abandoned their equal protection claims and have not otherwise carried their summary judgment burden, so Count Six should be dismissed. *See, e.g., Young v. Ovella*, No. 1:12-cv-390 LG-JMR, 2013 WL 1800589, at *2 (S.D. Miss. Apr. 29, 2013) (concluding the plaintiff's abandoned their claim by failing to oppose the defendant's summary judgment motion).

15

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Delta Elizabeth Hitt's Motion [150] for Partial Summary Judgment is **GRANTED IN PART**, as to Counts One, Three, Four, Five, Six, Seven, and Eight, and as to the claims for negligent infliction of emotional distress in Count Nine, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant's Motion [150] is **DENIED IN PART**, as to the claims for intentional infliction of emotional distress in Count Nine, which along with Count Two, will proceed to trial as against Defendant Hitt.

**SO ORDERED AND ADJUDGED**, this the 17th day of July, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

16