**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | |
|---|---|
| **GINGER UPTON and SARAH BEACH** | **PLAINTIFFS** |
| **v.** | **Civil No. 2:24-cv-129-HSO-BWR** |
| **JAMIE MOULDS, et. al** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
MICHAEL TURNER'S MOTION [153] FOR SUMMARY JUDGMENT**

Defendant Michael Turner was present at a traffic stop when Officer Delta Elizabeth Hitt allegedly conducted vaginal body-cavity searches of Plaintiffs Ginger Upton and Sarah Beach.  According to Plaintiffs, Turner knew this and failed to intervene, triggering bystander liability under 42 U.S.C. § 1983.  According to Turner, he did not know of, or witness, the body-cavity searches.  He now moves for summary judgment on grounds that Plaintiffs lack summary judgment evidence that he knew Hitt was performing body-cavity searches, and on grounds of qualified immunity.  *See* Mot. [153].  Because Plaintiffs lack competent summary judgment evidence showing that Turner knew Hitt was conducting body-cavity searches, his Motion [153] should be granted.

## I. BACKGROUND

On January 30, 2024, Plaintiffs Ginger Upton ("Upton") and Sarah Beach ("Beach") (collectively, "Plaintiffs"), along with two male passengers, were traveling in their vehicle in Columbia, Mississippi, when they were stopped by Defendant

Jamie Moulds ("Officer Moulds") of the Columbia Police Department ("CPD").

During the traffic stop, Officer Moulds smelled marijuana emanating from

Plaintiffs' vehicle, *see* Ex. "E" [150] (Moulds's Body Camera), at 3:10-3:11, and when

asked, a male passenger confirmed that "somebody probably smoked in here

yesterday," *see* Ex. "E" [150] (Riels's Body Camera), at 3:23-3:25. Subsequently,

Officer Moulds and CPD Officer Austin Riels ("Riels") searched the car and

discovered a "roach," the unburnt remnants of a marijuana cigarette, and a Xanax

pill. *See* Hitt Dep. Tr. [150-2] at 66-67; Ex. "E" [150] (Moulds's Body Camera), at

9:22-24, 9:32, 13:15. Officer Moulds radioed other officers and asked whether there

were any female officers on duty to search Plaintiffs. *See* Ex. "E" [150] (Riels's Body

Camera), at 18:25-18:30. Officer Michael Turner ("Defendant" or "Turner"), who

was not on scene, responded, *see* Turner Dep. Tr. [153-3] at 20, and drove Officer

Delta Elizabeth Hitt ("Hitt"),[1] a desk sergeant and the only available female officer,

to the traffic stop, *see* Hitt Dep. Tr. [150-2] at 38-41. Once she arrived, Hitt

searched Plaintiffs.

Plaintiffs allege that Hitt used excessive force by subjecting them both to

roadside vaginal body-cavity searches. Specifically, Plaintiff Upton testified that

Hitt "placed her fingers up inside my vagina, all the way inside[,] full fingers,"

Upton Dep. Tr. [150-3] at 7, and Plaintiff Beach stated that Hitt "went into the lips

of my vagina, and she took her two fingers and went up and down from the very top

---

[1] The Amended Complaint [10] names Delta Elizabeth Ward as a Defendant, but according to her counsel, her legal name is Delta Elizabeth Hitt. *See* Mem. [151] at 1. The Court will use her legal name.

of my clit to the bottom where my hole is," Beach Dep. Tr. [150-4] at 9. Hitt denies Plaintiffs' allegations, *see* Mot. [150], but relevant here, Defendant Turner was on scene when Hitt allegedly performed the body-cavity searches, *see* Ex. "E" [150] (Moulds's Body Camera), at 27:50-27:58.

Plaintiffs filed suit on August 22, 2024. *See* Compl. [1]. The operative Amended Complaint [10] names as Defendants Officer Moulds, Officer Chris Bush, Officer Riels, Officer Lance Poirer, Officer Turner, Officer Hitt, CPD Chief of Police Michael Kelly, and the City of Columbia, Mississippi. *See* Am. Compl. [10] at 1-3. On May 8, 2025, the Court granted in part and denied in part Turner's Motion [28] to Dismiss, *see* Ord. [39], and dismissed all of Plaintiffs' individual and official capacity claims against Turner except for their bystander liability claims arising under 42 U.S.C. § 1983. Turner now seeks summary judgment on that one remaining claim against him. *See* Mot. [153].

## II. <u>DISCUSSION</u>

### A. <u>Relevant Legal Standards</u>

#### 1. <u>Summary Judgment</u>

Federal Rule of Civil Procedure 56 requires summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (quotation

marks and citation omitted).  "The nonmovant must then come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  But "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008) (per curiam).  At summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Indeed, where a nonmovant's version of events is discredited by a videotape such that no reasonable jury could believe him, a court should view the facts "in the light depicted by the videotape."  *Id.* at 380-81.

2.    Qualified Immunity

"Section 1983 creates a private right of action for redressing violations of federal law by those acting under the color of state law."  *Olabisimotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  "In response, officials may raise the defense of qualified immunity," *Stevenson v. Tocé*, 113 F.4th 494, 501 (5th Cir. 2024), and once invoked, "qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available," *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016); *see also Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).  To make this showing, the plaintiff must establish: "(1) that the officer 'violated a federal statutory or constitutional right' and (2) that

4

'the unlawfulness of the conduct was clearly established at the time.'" *Ramirez v. Escajeda*, 921 F.3d 497, 500 (5th Cir. 2019) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018)) (cleaned up). A district court "may tackle these questions in whatever order it deems most expeditious." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). "When conducting this inquiry, courts must frame the constitutional question with specificity and granularity, rather than a high level of generality." *Baker v. Coburn*, 68 F.4th 240, 245 (5th Cir. 2023), *as revised* (May 19, 2023) (internal quotation marks and citations omitted). Simply put, "controlling authority or a robust consensus of persuasive authority must have placed the question 'beyond debate,' with 'the right's contours . . . sufficiently definite that any reasonable official in the [officer's] shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (alterations in original)).

"An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020). "Bystander liability requires more than mere presence in the vicinity of the violation," *id.*, and "liability cannot attach if the officer did not know about and acquiesce in the constitutional violation,"

*McDonald v. McClelland*, 779 F. App'x 222, 227 (5th Cir. 2019) (per curiam).  In the context of a roadside body-cavity search, it is "clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm."  *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).  And "no reasonable officer would have found a roadside body cavity search reasonable even if they 'reasonably suspected that Plaintiff was concealing contraband in a body cavity' if 'there were no exigent circumstances requiring the search to be conducted on the public roadside rather than at a medical facility[.]'" *Id.* (quoting *Martin v. City of San Antonio*, No. SA-05-CA-0020, 2006 WL 2062283, at *5 (W.D. Tex. July 25, 2006)).

B.    Analysis

1.    Plaintiffs' Claims of Other Unspecified Constitutional Violations

Defendant Turner argues that he is entitled to qualified immunity because Plaintiffs lack evidence that he knew Hitt was performing body-cavity searches. *See* Mem. [154] at 8.  Plaintiffs counter that Turner is liable under the doctrine of bystander liability, claiming that he knew Hitt was conducting body-cavity searches and failed to intervene.  *See* Mem. [178]; Am. Compl. [10] at 19.  Plaintiffs also decry what they claim is Turner's attempt to put their claims "into a box" by limiting their bystander liability claims to whether he had knowledge of the alleged body-cavity searches.  Mem. [178] at 1.  They maintain that they have "pled broader excessive force claims against the Defendants which inherently include a vaginal

body cavity search, as well as other unconstitutional searches involving the use of excessive force of which Turner was aware." *Id.*; *see also id.* at 7. Plaintiffs repeatedly reference these nebulous and undefined other alleged unconstitutional searches in an attempt to show that Turner knew of a constitutional violation. *See, e.g., id.* at 2, 3, 6, 7, 9, 11, 19. Although Plaintiffs never specifically identify what other violations occurred, it appears they are arguing, for the first time, that Turner knew the searches were retaliatory and failed to intervene. *See id.* at 11. But Plaintiffs' bystander liability claims are predicated only on the body-cavity searches. The Amended Complaint [10] clearly alleged only that "Defendants" failed to intervene while Hitt performed "the warrantless, unauthorized, roadside body-cavity searches," Am. Compl. [10] at 19, and Plaintiffs cannot now expand or reshape their claims at the summary judgment stage, *see Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021). Accordingly, such claims are not properly before the Court, and it will only address Plaintiffs' claims as they relate to whether Turner knew Hitt was conducting body-cavity searches during the traffic stop.

2.      The Alleged Body-Cavity Searches

Turner asserts that he "did not know of, see, or hear complaints of any vaginal search." Mem. [154] at 8. According to Turner, when he and Hitt arrived on scene, Hitt took Upton in front of Plaintiffs' car and searched her. *See* Turner Dep. Tr. [153-3] at 46. He says that he "didn't see any reason to stop the search," because he "had no reason to believe the search was done improperly." *Id.* Turner maintains that the "search occurred out of [his] view behind a vehicle," and that

7

"[a]t no time did [he] see or hear a body cavity search or an allegation of a body cavity search." Turner Aff. [153-4] at 1. Plaintiffs insist that the body camera footage "proves that Turner was a witness to many parts of the searches." Mem. [178] at 4. They argue that "Turner can be seen standing nearby with a clear view of the searches as they occurred," *id.* at 8; *see also id.* at 13, 14 (repeating the claim that Turner can "clearly be [seen] standing nearby with an apparent line of sight to the searches"), and that Turner had personal knowledge of the searches and failed to intervene based on the "comments/complaints made by the Plaintiffs," their body language, and the comments of other Defendants, *id.* at 4. But after reviewing the body-camera footage and the competent summary judgment evidence, Plaintiffs have not carried their burden to create a genuine issue of material fact regarding Turner's knowledge and acquiescence to the alleged body-cavity searches. *See McDonald*, 779 F. App'x at 227 (explaining that an officer must know of and acquiesce to a constitutional violation to be liable).

First, Turner testified that he did not see any reason to stop the searches and that he believed Hitt conducted the searches appropriately. *See* Turner Dep. Tr. [153-3] at 46. In her deposition, Plaintiff Upton testified that "Michael Turner kind of stayed towards the back," Upton Dep. Tr. [153-1] at 18, and that she did not see any officers looking at her during the alleged body-cavity search because her "back was turned towards them," *id.* at 89. And when Plaintiff Upton was asked whether she had personal knowledge regarding whether Turner observed the search, she said "no." *Id.* at 18.

Plaintiff Beach testified similarly; she conceded that she lacks personal knowledge regarding what Turner saw, Beach Dep. Tr. [153-2] at 23, and when asked about what Officer Moulds saw, she replied: "I guess none of us were aware that [the body-cavity search] was going [on] except Delta," *id.* at 70. Both Plaintiffs also admitted that they never told any officers during the encounter that Hitt was subjecting them to vaginal body-cavity searches. *See id.* at 22; Upton Dep. Tr. [153-1] at 34. And they both admitted that they did not see Hitt place her fingers in the other's vagina, but they "assumed" it was going on. Upton Dep. Tr. [153-1] at 37; *see* Beach Dep. Tr. [153-2] at 60. The foregoing is insufficient to create a material fact question for trial as to Turner's awareness of the body-cavity searches.

Nor does the video evidence create a fact question regarding Turner's awareness. *See Scott*, 550 U.S. at 380. The body-camera footage shows that when Turner and Hitt arrived on scene, Hitt took Plaintiff Upton to an area in front of the opened front-passenger car door of Plaintiffs' car. *See* Ex. "E" [150] (Moulds's Body Camera), at 27:50-27:58. Upton is standing in front of the passenger-side door and Turner is standing on the driver's side of the police vehicle some distance behind Upton's car. *See id.* In other words, Turner is on the opposite side of a different vehicle with a car door and window tint obstructing his view. *See id.* As Hitt searches Upton, Turner remains on the driver's side of the police vehicle. *See id.* at 28:11-28:42. At times, both Officer Moulds's and Officer Riels's body cameras capture an obstructed partial view of the search from an angle; although Upton can be seen standing in front of the car, due to the window tint and open doors,

9

anything happening below Upton's waist is not visible. *See id.* at 28:42-30:45; *see also* Ex. "E" [150] (Riels's Body Camera), at 25:18-25:36, 25:50-26:05, 26:27-26:40.

Despite this, Plaintiffs maintain that the video footage creates a genuine issue of fact regarding Turner's knowledge. They claim that because the following exchange occurred "directly in front" of Turner, he "knew that Defendant Hitt lacked justification for the continued search of Plaintiff Upton and that the search was exceeding constitutional bounds." Mem. [178] at 13.

| | |
|---|---|
| Beach: | Is she going to search me like that too? Like in my pants? . . . |
| Upton: | Socks off. Get ready for her to feel on your boobs and shit. Man, y'all could have took me to a bathroom for all that . . . nah the men over there were just sitting there staring. |
| Moulds: | Ginger, why'd you kick your shoe way over there when [Delta] asked you to pull it off . . . |
| Hitt: | She was got – she had an attitude you can come back over here . . . |
| Upton: | No, it's because there's men sitting there staring . . . |
| Hitt: | No, they are not staring at you – |
| Upton: | They were. |
| Hitt: | I need you back over here. |
| Upton: | But you told me you were done . . . . |

Ex. "E" [150] (Riels's Body Camera), at 28:57-29:43; *see* Mem. [178] at 9; *see also id.* at 11-13.

Although this exchange occurred near where Turner was standing, it took place after Hitt had searched Upton. Turner could not intervene to prevent a body-cavity search he did not know of, nor did Upton inform Turner (or the other officers) that a body-cavity search was occurring when Hitt searched Upton after this exchange. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (noting that the key inquiry in determining bystander liability is "whether [the defendant] had a

10

reasonable opportunity to realize the excessive nature of the force and to intervene to stop it"). Moreover, the video footage confirms that Turner's view of the search was obstructed; it shows Hitt searching Upton on the passenger side of Plaintiffs' vehicle, with both doors open, obstructing Turner's view from the driver's side of the police vehicle. *See* Ex. "E" [150] (Riels's Body Camera), at 29:00 (showing two open doors blocking Turner's view); *id.* at 29:03-29:06 (showing Upton walking back to the front of the police vehicle). The back-and-forth verbal exchange cited by Plaintiffs does not create a genuine issue of material fact regarding whether Turner knew a body-cavity search occurred because Upton does not inform the officers that one took place, and no body-cavity search is visible on the video.

Plaintiffs also point to the following exchange, claiming that Turner "can be seen standing near (and certainly within earshot)[.]" Mem. [178] at 9.

| | |
|---|---|
| Beach: | You did that twice . . . |
| Hitt: | [Unclear] |
| Beach: | I feel very violated; you did that twice. |
| Hitt: | So, I did that once . . . [unclear] |
| Beach: | But did they [pointing to the other officers] play with their dicks or balls? – |
| Upton: | No, they didn't. That's my point . . . . |

Ex. "E" [150] (Riels's Body Camera), at 35:40-36:06; *see also* Mem. [178] at 9.

Plaintiffs' claims in this regard are not supported by the record. *See Scott*, 550 U.S. at 380. This discussion between Upton, Beach, and Hitt, occurred on the passenger side of Plaintiffs' car and is captured by Riels's body camera. In the lead up to that back-and-forth, Riels walks past Turner, who is standing on the driver's side of the police vehicle, and approaches the driver's side of Plaintiffs' car. *See* Ex. "E" [150] (Riels's Body Camera), at 35:33 (capturing Turner standing at the hood).

11

Once he is next to the driver's side of Plaintiffs' car—and parallel to Plaintiffs—Riels's body camera captures the conversation. *See id.* at 35:35-36:06. But there is no evidence that Turner overheard this exchange from his position at the police vehicle. *See* Ex. "E" [150] (Moulds's Body Camera), at 31:30-31:50; 38:22-28:30 (showing Turner near the police vehicle and not capturing Plaintiffs' exchange with Hitt). Plaintiffs' conjecture and speculation that Turner was "certainly within earshot," and overheard the conversation, Mem. [178] at 9, is insufficient at this stage, *see Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991) (explaining that although "the court must be vigilant to draw every reasonable inference from the evidence in the record in a light most flattering to the nonmoving party," summary judgment may still be appropriate where "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation"). This is particularly so given Plaintiffs' deposition testimony.

Plaintiffs also point to various moments in the body camera video as evidence of Turner's knowledge. Plaintiffs first claim that "Defendant Hitt can be seen with her hands down Plaintiff Upton's pants" while "Defendant Turner can be seen standing nearby with a line of sight to the search." Mem. [178] at 14 (citing Ex. "E" [150] (Riels's Body Camera), at 30:59). Officer Riels's body camera shows him walk past Turner and draw parallel to the open driver's side door of Plaintiffs' car. *See* Ex. "E" [150] (Riels's Body Camera), at 30:45-30:59. From Riels's camera, Hitt can be seen briefly with her hands in what appears to be the waistband of Plaintiff Upton's pants. *See* Ex. "E" [150] (Riels's Body Camera), at 30:59. The footage

12

shows that Turner's view from this angle is obstructed, *see id.* at 29:48-53 (showing Turner's angle); *id.* at 31:00 (showing Turner at the police vehicle), and there is no evidence that he witnessed this search from his position.  Plaintiffs admitted that they have no personal knowledge of what Turner saw, *see* Upton Dep. Tr. [153-1] at 18; Beach Dep. Tr. [153-2] at 23, and their speculation cannot create a genuine issue of material fact, *see Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006) ("Conclusory allegations and unsubstantiated assertions, however, are not competent summary judgment evidence."); *Riley v. Univ. of Alabama Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based on personal knowledge and is not competent summary judgment evidence.").

Next, Plaintiffs point to another moment on Riels's body camera where Hitt is seen with her hands in Beach's pants.  *See* Mem. [178] at 14 (citing Ex. "E" [150] (Riels's Body Camera), at 34:14).  Like before, Officer Riels walks past Turner, draws parallel to the car, and his body camera captures Hitt with her hands in the waistband of Beach's pants.  *See* Ex. "E" [150] (Riels's Body Camera), at 34:00-34:24.  But Plaintiffs have not presented evidence that Turner, who was standing elsewhere and testified he did not see anything improper, witnessed this search. *See* Turner Dep. Tr. [153-3] at 46.  Plaintiffs' speculation about what Turner saw is insufficient.

Finally, Plaintiffs point out that during the traffic stop, Turner told Moulds "they giving Delta a hard time up there cause she run her hands in their pants . . .

13

." Mem. [178] at 16 (citing Ex. "E" [150] (Moulds's Body Camera), at 38:30-34).  But this statement does not show that Turner knew Hitt was conducting body-cavity searches and that he had a chance to intervene.  For Turner to be liable, he must "know[] that a fellow officer is violating an individual's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).  To be sure, if Turner *knew* Hitt was performing body-cavity searches, then he knew or should have known that a fellow officer was violating Plaintiffs' rights.  *See Hamilton v. Turner*, No. 3:13-cv-240, 2014 WL 1513355, at *4 (S.D. Tex. Apr. 16, 2014); *see also Martin*, 2006 WL 2062283, at *5-6.  But at most, the evidence shows that Turner knew Hitt had run her hands through each Plaintiff's pants, a far-cry from knowing Hitt had allegedly "placed her fingers up inside [Plaintiff Upton's] vagina," Upton Dep. Tr. [150-3] at 7, or that Hitt "went into the lips of [Plaintiff Beach's] vagina," Beach Dep. Tr.  [150-4] at 9.  There is insufficient summary judgment evidence to support a finding that Turner knew the alleged body-cavity searches were occurring and had a chance to intervene, so Turner is entitled to summary judgment.

Although Plaintiffs' bystander liability claims are only predicated on the alleged body-cavity searches, *see* Am. Compl. [10] at 19, even if their claims were based on Turner's knowledge that Hitt "ran her hands" through each Plaintiff's pants, he would be entitled to qualified immunity.  When Hitt's conduct is visible on the body camera, she can only be seen running her hands through the waistband of each Plaintiff's pants.  *See* Ex. "E" [150] (Riels's Body Camera), at 30:59 (Upton), 34:00-34:24 (Beach).  "Plaintiffs have the burden to demonstrate that the law was

14

'clearly established,'" that as of January 30, 2024, "any reasonable officer would have known that the Constitution required them to intervene" under such circumstances. *Bartlett*, 981 F.3d at 345. And the Court "cannot deny qualified immunity without identifying a case in which an officer under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.*

Here, the officers had probable cause to search Plaintiffs' vehicle because Officer Moulds smelled marijuana emanating from Plaintiffs' vehicle, *see* Ex. "E" [150] (Moulds's Body Camera), at 3:10-3:11, and a male passenger admitted that "somebody probably smoked in here yesterday," *see* Ex. "E" [150] (Riels's Body Camera), at 3:23-3:25. *See United States v. Young*, 554 F. App'x 276, 277 (5th Cir. 2013) (per curiam) ("The smell of marijuana alone may constitute probable cause to search a vehicle." (cleaned up)). And once the officers discovered the roach—and no one came forward to claim it—the officers had probable cause to arrest Upton, Beach, and the male passengers. *See Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (holding as constitutional the warrantless arrest of all passengers in a car in which drugs were found when none of them claimed ownership). "A search may begin prior to arrest, and still be incident to arrest," if the police "have probable cause to arrest prior to beginning a search." *United States v. Patiutka*, 804 F.3d 684, 688 (4th Cir. 2015). So, in order to overcome qualified immunity, Plaintiffs must demonstrate that any reasonable officer would have known that the Constitution

15

required them to intervene when officers had probable cause to arrest and when he or she learned that another officer was running her hands through a suspect's pants during the search.  *See* Ex. "E" [150] (Moulds's Body Camera), at 38:30-34.

The Court has been unable to locate, and Plaintiffs have not identified, a single case that supports that argument.  Based on the evidence in this case, even if Turner knew that Hitt had conducted a waistband search of each Plaintiff, Plaintiffs have not identified a single case requiring an officer to intervene under those circumstances.  This was Plaintiffs' burden in order to overcome qualified immunity.  *See, e.g., Baker*, 68 F.4th at 245.  To the extent Plaintiffs' claims are based on Turner's knowledge that Hitt ran her hands through each Plaintiff's pants, he is entitled to qualified immunity because Plaintiffs have not carried their burden of showing that Turner violated clearly established law at the time by failing to intervene.  *See Bartlett*, 981 F.3d at 345.

In sum, Plaintiffs lack sufficient summary judgment evidence showing that Turner knew Hitt was conducting body-cavity searches, that he had a reasonable opportunity to prevent the harm, and that he nonetheless failed to intervene. Plaintiffs have admitted that they lack personal knowledge regarding what Turner knew or saw, *see* Upton Dep. Tr. [153-1] at 18; Beach Dep. Tr. [153-2] at 23, 70, and they have admitted that they did not inform any of the officers that they were being subjected to vaginal body-cavity searches, *see* Beach Dep. Tr. [153-2] at 22; Upton Dep. Tr. [153-1] at 34.  Moreover, their claims about what the body-camera footage depicts are contradicted by the footage itself.  *See Scott*, 550 U.S. at 380.  Plaintiffs'

16

speculation and beliefs about what Turner knew or observed are insufficient to overcome summary judgment, and their bystander liability claim against him should be dismissed.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Michael Turner's Motion [153] for Summary Judgment is **GRANTED**, and Plaintiff Ginger Upton's and Sarah Beach's bystander liability claims against Defendant Turner are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Michael Turner is **DISMISSED** as a party to this suit.

**SO ORDERED AND ADJUDGED**, this the 17th day of July, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

17